UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAKIEA THOMPSON,

           Plaintiff,   Case # 18-CV-167-FPG

v.                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

## INTRODUCTION

Plaintiff Takiea Thompson seeks review of the decision of the Social Security Administration ("SSA") to deny her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 18. For the reasons that follow, the Commissioner's motion is GRANTED and Thompson's motion is DENIED.

## BACKGROUND

Thompson protectively applied for DIB and SSI on January 18, 2014. Tr.[1] 178-88. After the SSA denied her claims, Thompson and a vocational expert testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 40-90. On March 20, 2017, the ALJ issued an unfavorable decision. Tr. 15-33. After the Appeals Council denied her request for review, Thompson appealed to this Court. Tr. 1-6; ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," which means that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which reflects the claimant's ability to perform physical or mental work activities on a sustained basis despite his or her impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must demonstrate that the claimant retains the RFC "to perform alternative substantial gainful work" in the national economy in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ found that Thompson had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. He also found that she has several severe impairments, but that those impairments do not meet or medically equal the criteria of any Listings impairment. Tr. 17-20.

Next, the ALJ determined that Thompson retains the RFC to perform light work[2] with additional limitations. The ALJ concluded that Thompson cannot perform her past relevant work,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the

3

but that she can adjust to other work that exists in significant numbers in the national economy. Tr. 31-32. Accordingly, the ALJ found Thompson not disabled. Tr. 32.

**II.    Analysis**

Thompson argues that the Court should remand this case because the ALJ erred at step two and the finding that she can perform light work is not supported by substantial evidence. ECF No. 13-1 at 21-24. The Court addresses each argument below.

**A.    Step Two Determination**

At step two of the disability analysis, an ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . and significantly limits the claimant's ability to do basic work activities." *Williams v. Berryhill*, No. 16-CV-00807-LGF, 2018 WL 4501062, at *3 (W.D.N.Y. Sept. 20, 2018) (citations and quotation mark omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521, 416.920(a)(4)(ii), (c), 416.921. Under the duration requirement, the impairment must last or be expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909. An impairment is "nonsevere" if the medical evidence establishes a slight abnormality that would only minimally affect the claimant's ability to work. *Perez v. Astrue*, 907 F. Supp. 2d 266, 271 (N.D.N.Y. 2012); *see also* SSR 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

Here, the ALJ found Thompson's foot and ankle conditions to be nonsevere impairments. Tr. 18. After discussing the medical evidence and related opinions, the ALJ concluded that Thompson was "clearly disabled for period of a time as a result of her foot condition(s)" but found that "the individual and collective conditions are not . . . durationally sufficient to be considered a

---

ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

severe medically determinable impairment." *Id.* Thompson argues that this finding was improper because she received treatment for her foot and ankle conditions for nearly three years and asserts, without citing record evidence, that her foot and ankle issues "could certainly affect her ability to perform basic work activities." ECF No. 13-1 at 22.

Thompson ignores the fact that the presence, diagnosis, or treatment of an impairment is insufficient to render a condition severe; rather, an impairment is considered severe based on the functional limitations it imposes. *See Hayes v. Berryhill*, No. 17-CV-6354-FPG, 2018 WL 3069116, at *3 (W.D.N.Y. June 21, 2018) (citations omitted). Although Thompson was treated for and complained of various foot and ankle issues for about three years, the record reveals that she only suffered functional limitations for a few months after she had right ankle surgery.

Thompson had right ankle surgery on May 16, 2014, and her doctor indicated that she would use a scooter or crutches to avoid bearing weight on her right leg for the next six weeks. Tr. 495-96. At a follow-up appointment on July 1, 2014, Thompson was still using a scooter to get around and her doctor opined that she had a 100% temporary impairment. Tr. 1030-31.

By September 4, 2014, however, Thompson was "doing well" and had no complaints or pain, and her doctor opined that she could return to full duty work as long as she did not lift more than 30 pounds and indicated that she had a 0% temporary impairment. Tr. 1028-29. In December 12, 2014, Thompson's right ankle was still doing well and her doctor again indicated that she had a 0% temporary impairment. Tr. 1025-26. Accordingly, the ALJ properly determined that Thompson's right ankle condition was nonsevere because it only imposed functional limitations for a few months and therefore did not meet the durational requirement. *See, e.g.*, *Seekins v. Astrue*, No. 3:11-CV-264 (VLB) (TPS), 2012 WL 4471266, at *3 (D. Conn. Aug. 14, 2012), *report and recommendation adopted*, 2012 WL 4471264 (Sept. 27, 2012) ("Thus, substantial evidence

5

supports the ALJ's determination that the plaintiff's [impairment] was not severe, as [it] did not satisfy the twelve-month durational requirement.")

The ALJ noted that Thompson had other foot issues such as plantar fasciitis, right metatarsalgia, and a possible webspace neuroma (Tr. 18 (citing Tr. 1018-19, 1023)); however, at the appointments where her doctor acknowledged those issues, she nonetheless indicated that Thompson had a 0% temporary impairment. Tr. 1020, 1023. The record also reveals that Thompson fell in November 2013 and suffered a left foot contusion and experienced pain, but by July 2014, she was "doing well" and needed no further treatment. Tr 535, 661, 1031. There is no evidence that these impairments significantly limited Thompson's ability to do basic work activities, and therefore the ALJ properly classified them as nonsevere.

Accordingly, for all the reasons stated, the ALJ did not err at step two and his findings are supported by substantial evidence.

## B. RFC Determination

A claimant's RFC reflects what she "can still do despite [her] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). ALJs "weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

Here, the ALJ determined that Thompson retains the RFC to perform light work, which requires an employee to lift no more than 20 pounds; frequently lift or carry up to 10 pounds; and engage in "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Thompson asserts that this finding is not supported by substantial evidence, but several medical opinions are consistent with light work. As to the lifting requirements of light work, the ALJ relied on occupational therapist Joseph Higgins's opinion that Thompson could lift and carry 20 pounds occasionally and 10 pounds frequently, Dr. Gurske-dePerio's opinion that she could lift up to 30 pounds, and Drs. Fishkin and Tetro's opinions that she could lift up to 20 pounds. Tr. 29 (citing Tr. 593, 865, 1029, 1273).

As for the sitting, standing, and walking requirements of light work, the ALJ relied on OT Higgins's opinion that Thompson could frequently sit and stand and could occasionally to frequently walk. *Id.* (citing Tr. 1273). The ALJ also gave great weight to consultative examiner Dr. Liu's opinion that Thompson has moderate limitation in her ability to engage in prolong walking, which, in combination with the other evidence outlined above, is compatible with light work. *Id.* (citing Tr. 719); *see, e.g.*, *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (finding that RFC for medium work was consistent with opinion that plaintiff had limited ability to engage in prolong walking and indicating that moderate limitations in sitting, standing, and walking are not necessarily inconsistent with light or medium work).

Although Thompson cites record evidence that she believes supports a more restrictive RFC, the Court is not concerned with whether substantial evidence supports her position; rather, the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). As described above, substantial evidence supports the ALJ's determination that Thompson could perform light work.

Thompson also argues that the ALJ should have weighed the medical opinions differently by giving greater weight to more restrictive opinions, but it was up to the ALJ to resolve such

conflicts in the record. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). The ALJ acknowledged that Thompson's doctors provided several restrictive assessments, but concluded that their opinions as a whole demonstrated progressive improvement in Thompson's ability to work.

The ALJ noted, for example, that Dr. Gurske-dePerio initially opined that Thompson was "totally disabled" but then indicated that she could return to work if she did not lift over 30 pounds and that she was 0% disabled. Tr. 29 (citing Tr. 1029, 1031). Similarly, the ALJ acknowledged that Dr. Fishkin opined in 2013 that Thompson could only lift up to 15 pounds, but then in 2014 he opined that she could lift up to 20 pounds. *Id.* (citing Tr. 800, 865, 881, 907). The ALJ also summarized and evaluated numerous opinions from Dr. Tetro, who at times found Thompson completely or partially disabled but then opined that she could return to work if she avoided repetitive and forceful gripping and grasping, which the ALJ accounted for in the RFC. Tr. 30.

The ALJ also gave less weight to several opinions because they were based on workers' compensation standards. Tr. 29-31. This was a proper reason to discount those opinions because workers' compensation claims are governed by different standards than Social Security disability claims; therefore, an opinion rendered for workers' compensation purposes is not binding on the ALJ. *See, e.g.*, *Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 135 (N.D.N.Y. 2012).

Accordingly, for all the reasons stated, the ALJ's determination that Thompson could perform light work is supported by substantial evidence and the ALJ did not err when he evaluated the conflicting medical opinions.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is GRANTED, Thompson's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 26, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court